The next case up is 411-0296 People v. Monsingh. For the appellant is Martin Quintana. Correct. Is that pronounced correctly? Yes. And Luke Mitchell, Mr. Quintana, you may proceed, sir. Thank you. Good morning. May it please the court. Counsel. Your honors. Counsel. My name is Attorney Martin Quintana from the law firm of Sutter and Horry. On behalf of the appellant, Mr. Deepak Monsingh. In this case, the appellant, if you would, was found guilty of domestic battery. And there are four issues that we have brought up in our petition, if you would, in our brief. One of our main focus is primarily the fact that the prosecution in this case did not prove Mr. Monsingh beyond a reasonable doubt that he committed the crime of domestic battery. And furthermore, that Mr. Monsingh was denied a fair and impartial trial. The facts in this case are quite specific. And I understand that you are well versed in facts. But specifically to jump to January 25th, when 25th of 2011, when this case took place, Mr. Monsingh was arrested on that day for domestic battery and two other counts, which was battery. And the victims involved specifically were Judith Burke, who was the defendant's wife, and Aaron Burke, which was the defendant's stepson. On that day, it was alleged that Mr. Monsingh had pushed the wife, which would be Judith Burke, in the back. And at one point, it was said that that was facts that actually led to him being guilty. Now, one of the things that I'd like to start right off the bat in is to say that in this case, the circuit court erred in finding Mr. Monsingh guilty of domestic battery because the prosecution in this case did not meet its burden. How did they not meet its burden? Well, what happens is, at one point, as I said through the facts of the case, you have the victims, not witnesses, but the victims, and it's very important to keep in mind that we're talking about victims. The victims in this case went to the prosecutor and said, at least, I want to say, weeks before the actual trial date, which would have been on August 18th of 2011. So weeks before, I'm sorry, strike that, August 15th of 2010. Weeks before, the victims go and appear with the prosecutor to say, Mr. Prosecutor, my husband did not commit the crime of domestic battery. And we have affidavits sworn here that we'd like to give to you to explain to you that there was inaccuracies in the statement, which was a written statement and a video statement that we gave prior. And, of course, the written statement, as you all may know, was given, I believe, the day of or days later, and then, more importantly, a videotaped statement was given. But we have victims that are telling the prosecutor, the defendant that's charged with this crime is not guilty of this crime, and we're asking for your help. And the prosecutor basically, I guess, if you will, takes it into his hands and says, to the effect, that's irrelevant, this trial is going to go on, whether you like it or not. And I understand your victims, but guess what, it's going to move on. So what? I mean, I don't understand what difference does it make if the prosecutor wants to prosecute the case? Well, here's, in my humble opinion, here's the difference. If you have an individual who, hypothetically speaking, is a victim that says, I was shot at, and then this victim goes through the process of maybe identifying somebody in the lineup, and then thereafter identifies this person in the lineup, and then that person is investigated, and then the police go after this defendant, and then now a trial will ensue. But right before the trial, in my hypothetical, the victim goes to the prosecutor and says, you know what? You got the wrong guy. You got the wrong guy. That isn't this case. It isn't saying that you got the wrong guy. It's saying, they did not do what I have previously told you they did twice. Right. And I would submit to you that they specifically said they were inaccurate. What a shock. Victims of domestic violence change their story. Very true. This must be the first time that's happened, counsel. No. You're right. It's not the first time that's happened. And in your hypothetical, we see cases all the time where people that have been shot at say, well, I'm not really sure that Smithy did that. Maybe it was somebody else in that alley that shot at me, even though I've previously sworn to the grand jury and various law enforcement officials that that's who took the shots at me. And the defendant ends up being convicted anyway because of the surrounding evidence and or prior statements. I understand what you're saying, Your Honor. And one of the things that I guess if one is to accept that the victims are stating to the prosecutor prior to the court proceedings that it will be a trial, which in this case was a jury trial. Okay, fine. So if we move past that and the prosecutor says, regardless, we're moving on, now there are certain arguments that we would make to say, rather than allowing those statements that came in, such as the written statement and the video statement, the jury now gets confused, if you will, because they're going to hear a written statement and a video statement and they have the victims come into court and testify to live testimony. And then the jury finds the defendant not guilty of two counts of battery against Aaron Burke and in guilty of a domestic battery, which was the alleged push regarding Judith Burke. So I guess what we're saying in our argument is in this situation, you have the difference between a highly prejudicial and inflammatory pieces of evidence that come into the record. And furthermore, the admonishment that possibly the judge could have given to the jury to say, ladies and gentlemen of the jury, the evidence that you heard possibly has to be given certain weight. Understanding that they were statements made in a written and recorded statement, video statement, and then now giving some sort of admonition to say, you have the defendant, if you will, but more importantly the victims in court testifying in front of ladies and gentlemen of the jury and saying, we're here and guess what, this didn't happen. What sort of instruction are you saying the judge is required to give? I guess there's nothing in IPI, of course, on this, is there? Is that right? No. Okay. So they have to make up something on the spot because the jury wouldn't have known otherwise that the victims who are now claiming different circumstances are testifying differently than their earlier statements. The jury didn't know that? No. Assuming that they, of course, picked up on that. Oh. Assuming that they picked up on that and then I guess really the argument would be is to say that maybe the trial could properly have explained to them to weigh the evidence in, I guess, if you would, specifically in this situation, to explain to them that the process, which is you have the written statement, you have the video statement, now that you're alive, ladies and gentlemen of the jury, you have to weigh the evidence properly. Nothing was said to that effect in the trial record as far as I know. And you're right, there is nothing in the IPI. Yeah. So what should they have said? Don't believe the earlier statements? Not necessarily. No. But that's close to the instruction you think would be appropriate? Just to give it proper weight as it is that it was given, the written, the video, and then the live testimony that comes. Because the live testimony months later is inherently so much more believable than what they said that night or a few days later. I guess opinions would vary on that. Which the jury, I mean... Could decide. Right. Who asked for a jury trial? Well, it... And that's the idea, that 12 individuals will listen to the evidence and will weigh the credibility and any interest or bias that any of the witnesses may have, and decide what to believe and whether what they believe is sufficient to convict. One of the things that we also, as we discussed this, and I discussed this case with my partners, we discussed the fact that a judge could have also, in this circumstance, set aside the verdict of guilt when, at the end of the day, placing significant weight on the victim's live testimony in open court, and, if nothing else, accepting the discrepancies of the fact that in testimony, the victim, victims that came into court, would possibly have enough reasonable doubt within the testimony itself that he had heard to say, Wait a minute, I have the actual victims coming into court to testify that... We're not saying that we didn't say that prior written and videotaped statements. We're saying that it was inaccurate as to what we said before, under the stress of the police investigation that was occurring, which was brief, of course. But, more importantly, that they were under the stress that at the time they gave the statements, and then later on gave a video statement... Were the statements inappropriately admitted? We would argue that the statements were inappropriately admitted based on the fact that they were consistent, not in its entirety, but consistent primarily with the live testimony that they gave. So you'd have to dissect the written statement as to what was said, with the videotaped statement as to what was said... They were different, but not sufficiently inconsistent to be admissible? Yes. Yes. That is what our argument would be, that maybe in this situation, if we wouldn't have had the written and videotaped statements come into evidence, the jury could have actually just listened to the live testimony of the victims and said, okay, here we are, the defendant's getting his day in trial, and you have the victims coming in saying, it did not happen the way maybe we had stated in the past. Not bringing in any evidence of a written or videotaped statement. Which, of course, happens all the time, that we have live testimony from victims who are here to say, ladies and gentlemen, it didn't happen that way. I suppose that's one of the reasons the state decided to video record these statements. Because they thought that in cases like these, people might change their minds? It could be a reason why. But I submit to you this. What's interesting about that, that you just brought up, Your Honor, is that when I told you that the prosecutor went into a conference, if you would, with the victims, and they brought in their affidavits and stated to the prosecutor, this did not happen the way we specifically said the way things have happened. We're here to correct the record, if you would. And at that point in time, it's almost like submitting to Your Honors that the prosecutor almost like allowed these victims to go into court, knowing that they're going to testify, I guess lie, if you would, or change the facts, if you would. And almost submit to a so-called perjury. Submit them to perjury, because he knows that they're going into court and saying, no, what we said earlier, where we signed and gave the videos, so basically he's going to say, you know what, go into court, just go into court and testify. Almost saying, go into court and testify and say whatever you want. But I gotcha. Because I got a written statement, I got a video statement, and I'm going to have my finger on that button ready to play as soon as you say something inconsistent. And boom, he presses play, and there it is, and ladies and gentlemen of the jury, see the video. And that's a bad thing? Yes. Does this argument work in Cook County, counsel? I wouldn't necessarily say it works in Cook County. Yeah, I suspect you do most of your practice at 26th Street and the branch court. I'm just curious. That is one of the areas that are from Dutch practice. Are the judges up there receptive to this sort of an argument? I would say that they listen to the argument. I don't know if they're always that receptive. I notice also, by the way, among other reasons you point out about how this was an injustice and improper. You say, furthermore, there's no history of domestic violence. But you don't cite anything to the record about that, and I'm curious at what point was that a factor for the jury to consider or the prosecutor? Who and when was this supposed to be a consideration for the trier of fact or the prosecutor? And how do we know any of it? How do we know that there was no prior violence? Yeah, you don't cite anything for the record in support. This is about on page 14 of your brief. Furthermore, there's no history of domestic violence. I'm just kind of curious as to was this something presented to the jury? Was this something that they had heard? Yes, Your Honor. What happened was, if I remember correctly, Judith Burke and Aaron Burke also, I believe, testified that there had not been any previous violence by Mr. Deepak Mansin regarding both of them specifically. As far as any so-called tangible evidence, of course, there was none. Not to mention, if you would, of course, we weren't the trial attorneys, of course, in the lower level. But to answer specifically the question, there was oral evidence, if you will, that came in that said we've never had any issues. So the so-called push of the wife, Judith Burke, when it was described that he was, meaning the defendant, was leaving out the door with his wife because they were going to run late to work. And as he went to push her through the door, if you would, and notice how I say push her through the door. The fact there's a difference between, if you would, submitting to Your Honors, that you can say the word push, the word shove, the word guide. Whatever you say, the fact is, is later it occurs that the victim, Aaron Burke, who mind you, again, are not witnesses. They're actually the victims who come into court and say, you know what? It didn't happen that way. I thought I saw him push my mom, but I didn't see him push my mom. He actually was like batting her out because he was kind of saying, I think he says, I was trying to get her out the door, like come on, come on, let's go, because they were running late. And basically the difference between that being not a shove versus moving her along and with that said, I guess at that point, whatever was said to the jury in the lower courts based on that specific word of push and not giving as great a weight, I guess, to the statement that Aaron Burke stated that says, I was wrong. I was wrong. It wasn't that. He did not push my wife. He helped her along, if you would, as they left to go to work. And mind you, again, was the great point that you brought up, Your Honor, which is there was no pictures of any damage, any harm, nothing. There was absolutely nothing. The officers were there right on the scene, and Judith Burke wasn't hurt. No ambulance was called, nothing of the sort. So it basically was two victims who described the story the way they did and then later wanted to specifically make the record And then thereafter, we end up at a jury trial where both a written statement, a video statement, and then the live testimony of the victims to come into court and say, it didn't happen that way. And then guess what? The jury says, well, you know what? We heard this, this, and we're not going to give you that much weight because of your testimony that's live here. I can't submit to you. I don't understand why. But the fact is when you have somebody, like I gave an example, if you have the actual person who comes into court and says, I was shot, but it wasn't him. It was somebody, I think I have an idea. I'm not quite sure who it is, but I'm almost positive I know who it is, but it wasn't him. Thank you, Counselor. Your time is up. You have an opportunity to address this again in rebuttal. Thank you. Thank you very much. Thank you. May it please the Court? Counsel? As for the sufficiency of the evidence argument, the prior inconsistent statements clearly establish and claim that the defendant shoved Judith out the door and hit and choked Aaron. As for the credibility, the jury is obviously in the best spot to judge the credibility of the witnesses, but there are a few things in the record that indicate the trial testimony was not credible, those being that Judith and Aaron both claimed that they changed their stories, after speaking with the defendant. The defendant, however, denies even talking to Judith and Aaron about this incident prior to trial. He then is reminded of their trial testimony. How are we supposed to evaluate all this when we don't have the video recordings?  Well, or to judge which story is more true than not, the first story or the second story? Again, an improper record would be not the State's burden to provide those. No, but it is. We got a disc. It's non-playable. So, presumably, the State was in possession of the record because it didn't come up. I mean, the disc did not come up with the record. We had to ask for that separately. So it didn't come from the defense. It was part of the State's evidence, and it's unreviewable. How are we supposed to decide in a case like this where we've got to decide which statement is more credible, the one that preceded trial or the one at trial? How do we do that? Again, it's in the record that the videos were played for the jury. But we weren't there. True. We're supposed to look at that, right, as part of our review? Isn't that part of our mandate? Yes, there are the written statements also that were given to the police at the scene or a day after that also claim the same things as they say in the video. That was testified to by Judith and Aaron both at trial. Counsel, you're the counsel for the State here. You weren't responsible for this at the trial level. But we are hoping that you will express this court's concerns to the trial-level prosecutors about how they have to take care to preserve and protect the evidence presented at trial so that if they're using video disks or whatever that you might be presenting to the jury, that it's capable of being considered by this court on appellate review if an issue arises. Of course. It isn't the defendant's burden to, you know, this wasn't his disk. It was the State's disk. They're the ones who took it. I don't know if the fault is with the police or the prosecutor at trial or whatever happened, but it's a problem. Again, yes, some of the, I've reviewed many DVDs and they are shaky on which players they play on. They shouldn't be. I agree. I mean, we're long since passed the State when the stage when this should be a problem. So please just convey our concerns that we expect not to see this in the future. Will do. Again, back to the statements made, which were also in the record as written statements. They both conveyed that, again, Aaron and Judith both conveyed that Judith was shoved out the door and that Aaron was hit and choked. Defendant's trial testimony, he first denied that he even talked to Aaron and Judith about the incident. Then when he was reminded that they both admitted to trial, that they not only talked to the defendant, but their stories changed, he then changed his story and said that he had, in fact, talked to them very recently multiple times about the incident. Defendant also had two different stories about why Judith stumbled out the door. He told the police at the scene that he was actually reaching for her keys as she was leaving, and this caused her to stumble. At trial, he did not mention keys at all, just stated that he had the hand on the small of her back and that she stumbled out of the door herself. And finally, defendant admitted at the scene that he choked Aaron. This was corroborated by the police's testimony of observing red marks on his neck. He admitted to Officer Frye at the scene that he choked Aaron, and then he denied this at trial. So there are multiple inconsistencies between the previous statements and multiple reasons why the trial testimony should be considered incredible, at least in relation to the prior inconsistent statements. Also, the prior inconsistent statements were properly admitted. Section 115-10.1 does not require inconsistency. A direct contradiction can also include evasive answers, silence, or changes in position, although I would argue that this was a direct contradiction, at least to the major allegations of the case. It was directly opposite at trial. They said that Judith wasn't shoved and that Aaron was not hit and choked, whereas the prior inconsistent statements said the exact opposite. So, pursuant to this court in Grayson, this was inconsistent as the statute, Section 115-10.1. Also, Justice Stegman in People v. Curtis rejected the argument that corroborating evidence must be presented when a conviction is predicated upon a prior inconsistent statement. There's one standard of review that applies to all the evidence, and the First District case, People v. Brown, the defendant's sites for this, was distinguished by the First District in Thomas, which followed the site of this court's reasoning in Curtis. Here, the statements were made soon after contemporaneous with the crime, at the latest three days after, I think, was the last video statement, whereas Aaron's statement was within hours of the incident. So, again, there's no special standard of review for prior inconsistent statements as substantive evidence. And finally, the prior inconsistent statements didn't bolster the state's case. Section 115-10.1 only deals with inconsistency with the trial testimony, not inconsistency with each other in the prior inconsistent statements. The First District has had three opportunities to examine this exact issue, in Johnson, then in 2010 in Maldonado, and most recently in 2011 in Perry. It held all three times that the introduction of more than one statement that's inconsistent with the witness's trial testimony is proper whether or not such statements are consistent with each other. The Supreme Court also denied defendants' petition for leave to appeal in the 2010 Maldonado case. So, as explained earlier, there's no doubt that the statements were inconsistent pursuant to the section, so it's inapplicable whether they were consistent with each other. For what it's worth, counsel, the Supreme Court has also pointed out that it's like the United States Supreme Court. Whether it chooses to grant or deny a petition for leave to appeal is without any significance. It doesn't mean, as your implication is, that somehow they approved our decision. It just means, as they've explained, for reasons good and sufficient to themselves, they've decided at this point in time not to review it. At the very least, it would mean that there weren't any conflicts within the districts. That doesn't even mean that. Even when there are conflicts in the districts, they're still not required. The only thing that requires them to take it would be a Certificate of Importance. Fair enough. They only take cases when the spirit moves them to it. Fair enough. I mention that because it's not a compelling argument to make, and given that's the Supreme Court doctrine, it's probably not one you should make. All right. Thanks for the tip. Okay. Anything further? No. Any more questions? Thank you, counsel. Any rebuttal, sir? Go ahead. Counsel discussed the video footage that, unfortunately, we also did not get to review. Of course, we asked for it, requested it, and I'm going to say to no fault, of course, counsel to my right, it wasn't produced. It was not produced. And therefore, at this point, I guess your honors and ourselves, of course, are in the same position. I get to listen to and see the videos. As to the fact that we have a situation here where counsel is speaking about the evidence, being the written statement and the video statements, being that they are inconsistent with the trial testimony that was given by the victims, counsel does point out that it's not to say that it was inconsistent with the actual allegations at issue, which deal with the domestic battery alleged to have occurred from the defendant to the wife. Specifically, I think that's important because, again, it goes along with the notion that if you have a consistent statement, how consistent does it have to be in order to be made consistent so that it can actually not come in versus how inconsistent and to what effect does it have to be said to be inconsistent that we're going to allow that in. I guess at this point, what we would be arguing in court is that to the nuts and the bolts and the guts of the inconsistency, if you would, didn't occur in this situation. They were consistent in the fact that something specifically happened, whereas an act itself occurred. But the explanation of what actually happened, specifically in this so-called push, shove, guided, what have you, is not being necessarily denied. They just wanted to explain it, which is why they went to the prosecutor's office and said, listen, let me explain to you that I think this whole thing, because I said to the police, just being Judith Burke, said to the police that he had shoved me or he had pushed me along and Aaron Burke said whatever he described it as, that he pushed mom. The fact is that that's why they were there to tell the prosecutor. Therefore, the prosecutor at that stage says, no, this is going to move on. Now it moves on. It gets to court. Now we're going to have an issue where I believe the trial attorney, if you would, for the first piece of evidence, which would have been Judith Burke's written statement, basically said that he objected to it as not being consistent, which was good, but then later I believe stipulated to the fact that the video comes in by stipulation, of course, and then thereafter you have Aaron Burke's written statement and I think the video statement as well was also allowed in as evidence because there was no stipulation to Aaron Burke's evidence, nor was there any objections. So therefore, I guess one could argue that if the judge in this situation would have been allowed, maybe there could have been a little bit more of an inquiry by the judge to say, wait a minute, not only do I have no objections, I have no issues at this point, I guess, that he saw of foundation or what have you, and therefore it got submitted. But once it got to what we call the directed finding at that point, maybe a judge could have said, you know what? I have heard this piece of evidence, such as the written and the video, and now I've got live testimony that eventually is going to come into play, which of course was on the state side, meaning the state put their case on, and he got to hear that, and that's the difference that we have here. The difference is that we have the victims, once again, coming into court and testifying as to what happened in this situation with the fact that the defendant didn't commit the crime. So if that's not enough to say you have a reasonable doubt, well, I think it would have been hopefully enough for the trial court to say, you know what, I'm going to find and grant the directive of directive verdict here, because this is what I would look at if the judge would say that you have reasonable doubt here because I have the victim here in court testifying for the state, if you would, of being allowed to be used as an advert witness, mind you, to be able to say, you know what, it didn't happen that way. And that's, of course, when the state gets to press play and have these videos spawned out to the jury so the jury says nothing further. Thank you kindly. Okay, thank you, counsel. Time is up. We'll take this matter under advisement of the recess until 1 o'clock.